## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

KRISTI DEARMAN                                                    PLAINTIFF

v.                                                    Civil No. 1:13-cv-267-HSO-RHW

STONE COUNTY SCHOOL DISTRICT, and
GWEN MILLER, individually                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DR. GWEN MILLER'S MOTION TO DISMISS ALL CLAIMS AGAINST INDIVIDUAL DEFENDANT GWEN MILLER

BEFORE THE COURT is the Motion [23] to Dismiss All Claims Against Individual Defendant Gwen Miller, filed by Defendant Dr. Gwen Miller, the Superintendent of the Stone County, Mississippi, School District. The Motion has been fully briefed. After consideration of the parties' submissions, the record, and relevant legal authorities, the Court finds that Dr. Miller's Motion [23] should be granted in part and denied in part. Plaintiff Kristi Dearman's individual capacity claims against Dr. Miller for First Amendment retaliation, violation of procedural due process under the Fourteenth Amendment, and malicious interference with employment should not be dismissed on summary judgment. Ms. Dearman's claim against Dr. Miller individually for intentional infliction of emotional distress should be dismissed. No claim for defamation will proceed because Ms. Dearman did not adequately plead a defamation claim in her Amended Complaint [15], and to the extent the Amended Complaint could be construed to assert such a claim, it will be dismissed.

# I. BACKGROUND

In August 2002, Plaintiff Kristi Dearman began working for the Stone County School District as a special education teacher at Stone County Middle School. Aff. of Dearman [25-2] at 1; Aff. of Miller [23-1] at 1. From 2003 until 2008, Ms. Dearman was a Local Survey Committee ("LSC") case manager and LSC Committee chair. Aff. of Miller [23-1] at 1. As an LSC case manager, Ms. Dearman was authorized to access middle school special education students' records through an online program called Special Education Automated System ("SEAS"). Aff. of Dearman [25-2] at 1; Aff. of Miller [23-1] at 1; Def.'s Reply [29] at 3. In SEAS, Ms. Dearman could complete individual education plans and re-evaluation plans for the special education students assigned to her. Aff. of Dearman [25-2] at 2. In 2010, Ms. Dearman transferred to the position of guidance counselor at Stone County Middle School. Aff. of Dearman [25-2] at 1; Aff. of Miller [23-1] at 1.

In 2011, Stone County Middle School special education teacher Jim Nightengale ran as a candidate in the election for Superintendent of the Stone County School District. Aff. of Dearman [25-2] at 1; Am. Compl. [15] at 2. During his campaign, Mr. Nightengale openly criticized the School District. Defendant Dr. Miller was a part of the School District's administration. Aff. of Nightengale [25-1] at 1-2. Ms. Dearman, along with several other teachers, openly supported Mr. Nightengale's campaign. Aff. of Dearman [25-2] at 1. Ms. Dearman placed a "Jim Nightengale" sign in her front yard. *Id.* According to Ms. Dearman, she was told by Stone County Middle School's principal that there could be negative repercussions for having a Nightengale sign in her yard. *Id.*

In November 2011, Mr. Nightengale lost the election for Superintendent to Dr. Miller.  Aff. of Nightengale [25-1] at 1; Aff. of Dearman [25-2] at 2.  Dr. Miller took office in January 2012.  Aff. of Dearman [25-2] at 2.  In July 2012, Ms. Dearman was transferred to a guidance counselor position at Stone Elementary School, and Mr. Nightengale was transferred to Stone County High School to teach "severe/profound special needs" students.  *Id.*; Aff. of Nightengale [25-1] at 2.

Both Ms. Dearman and Mr. Nightengale refer to their transfers as unilateral transfers prompted by Dr. Miller, occurring despite their protests that they were not trained to teach elementary students or "severe/profound special needs" students, respectively.  Pl.'s Resp. [25] at 3; Aff. of Nightengale [25-1].  Ms. Dearman makes the conclusory allegation in her Affidavit that "[o]ther teachers who supported Nightengale were also 'moved' around."  Aff. of Dearman [25-2] at 2.  Ms. Dearman has not identified these "other teachers."  However, it is undisputed that Mr. Nightengale was also transferred in July 2012.  Aff. of Nightengale [25-1] at 2.

In January 2013, Wendy Rogers, Special Education Director for the Stone County School District, reported to Dr. Miller that Ms. Dearman was assisting Mr. Nightengale with evaluation plans for high school special education students.  Aff. of Miller [23-1] at 2; Letter [25-7] at 1.  On January 30, 2013, Dr. Miller and Ms. Rogers met with Ms. Dearman.  Ms. Dearman admitted that she had accessed SEAS at the request of Mr. Nightengale, who needed assistance completing re-evaluation plans for two high school special education students.  Aff. of Miller [23-1] at 2; Aff. of Dearman [25-2] at 2.  According to Dr. Miller, Ms. Dearman, as an elementary school guidance counselor, was not authorized to view high school special education students' records

and doing so violated the two students' statutorily-protected rights to confidentiality. Aff. of Miller [23-1] at 2. Ms. Dearman submits that she did not violate the students' confidentiality because she had completed evaluation plans for the same two students as an LSC case manager at Stone County Middle School when the students were in middle school. Aff. of Dearman [25-2] at 2.

Dr. Miller contends that Ms. Dearman had previously been instructed in 2010 "not to complete Jim Nightengale's work for him," after it was reported that Ms. Dearman was completing evaluation plans for Mr. Nightengale. Aff. of Miller [23-1] at 2. Dr. Miller maintains that Ms. Dearman acknowledged this previous incident during the January 30, 2013, meeting. *Id.* Ms. Dearman denies ever being told not to help Mr. Nightengale and insists that the administration directed Mr. Nightengale to "ask someone" if he needed help. Aff. of Dearman [25-2] at 2. Ms. Dearman submits that she was the most qualified to help Mr. Nightengale because she was the LSC case manager who last evaluated the two special education students in question. *Id*; Dearman Letter [25-4]. Ms. Dearman avers in her Affidavit that she also "corrected information in SEAS" for Ms. Rogers. Aff. of Dearman [25-2] at 2-3. Ms. Dearman contends that she used Ms. Rogers' SEAS user name and password, which Ms. Rogers provided to her, in order to complete this task. *Id.* Dr. Miller generally questions the veracity of Ms. Dearman's allegation regarding Ms. Rogers but has not provided summary judgment evidence contradicting it. Def.'s Reply [29] at 3.

Dr. Miller has submitted evidence indicating that Ms. Dearman accessed SEAS again on January 31, 2013, a day after she was told not to do so by Dr. Miller and Ms. Rogers. Docs. [23-1] at 7-0. Ms. Dearman does not address this evidence in her

Response and therefore does not dispute that she continued to access SEAS even after meeting with Dr. Miller and Ms. Rogers on January 30, 2013.

By letters dated February 21, 2013, Dr. Miller notified Ms. Dearman and Mr. Nightengale that she was recommending their termination to the School Board at its March 4, 2013, meeting.  Miller Letter [23-1] at 11; Miller Letter [29-1] at 34.  Dr. Miller's letter to Ms. Dearman provided:

> The reason for termination is the violation of Federal Law, FERPA, Federal Special Education Law: Individuals with Disabilities Education Act (IDEA), Federal and State Regulations: Procedural Safeguards Requirements under the Individuals with Disabilities Education Act Amendments of 2004 Section 612, Section 617, 34 CFR Parts 300 123, 300 610, 300 611, 300 612, 300 613, 300 614, 300 616, 300 618, and 300 623, and the Stone County School District Board Policy – IDDF/Special Education Programs[.]
>
> You violated a special education student's confidentiality by accepting an original IEP and re-evaluation from a high school special education teacher[.] You also utilized that teacher's username and password, which was provided to you, to access the student's personal identifiable data in the SEAS program in order to modify the re-evaluation.  You have also accessed another student's confidential information by editing information in SEAS[.]

Miller Letter [23-1] at 11.

Ms. Dearman requested a hearing on her proposed termination, and one was held at the School Board's meeting on March 4, 2013.  Am. Compl. [15] at 4; Aff. of Dearman [25-2] at 2.  The School Board did not immediately render a decision, and Ms. Dearman filed this lawsuit on April 30, 2013.  In May 2013, Ms. Dearman was notified that the School Board was not pursuing termination but would instead proceed with nonrenewal of her teaching contract.  Miller Letter [23-1] at 12;

Courtney Letter [15-2].  The stated reason for nonrenewal was Ms. Dearman's purported violation of special education students' confidentiality.  Miller Letter [23-1] at 12.

A School Board hearing on the proposed nonrenewal of Ms. Dearman's teaching contract was scheduled to occur on June 4, 2013.  *Id.*  On May 20, 2013, and upon her request, Ms. Dearman timely received the statutorily-required specific reasons for nonreemployment and supporting documents from the School District. Am. Compl. [15] at 5; Keith Letter [15-4]; *see* Miss. Code Ann. § 37-9-109.  In order for the hearing to proceed, Ms. Dearman was required to provide the School District "not less than five (5) days before the scheduled date for the hearing, a response to the specific reasons for nonreemployment, a list of witnesses and a copy of documentary evidence intended to be presented at the hearing."  Miss. Code Ann. § 37-9-109. Under the foregoing statute, a failure to provide a response would render "the recommendation of nonreemployment . . . final without the necessity of a hearing." *Id.*

Ms. Dearman's counsel maintains that on May 28, 2013, he mailed Ms. Dearman's response to the specific reasons for nonreemployment to Dr. Miller at her School District address.  Aff. of Waide [25-3]; Waide Letter [15-3].  According to Dr. Miller, neither she, the School District, nor its counsel received Ms. Dearman's response.  Def.'s Mem. [24] at 10; Def.'s Reply [29] at 12; Keith Letter [15-4].  By letter dated June 3, 2013, the School District, through counsel, informed Ms. Dearman's counsel that the June 4, 2013, hearing would not proceed because Ms. Dearman had not provided a response to the School District's specific reasons for

nonreemployment. Keith Letter [15-4]. The School District refused Ms. Dearman's counsel's request for a continuance of the hearing and his offer to resubmit Ms. Dearman's response. Aff. of Waide [25-3] at 1. A School Board hearing on Mr. Nightengale's proposed termination began on July 19, 2013, but was not completed. Aff. of Miller [29-1] at 3-4. The Court has not been advised of the status of the hearing.

On June 18, 2013, Ms. Dearman filed an Amended Complaint in this case asserting claims against the Stone County School District and Dr. Miller, individually. Ms. Dearman alleges that her "loss of employment was a result of [her] exercising her First Amendment rights and openly supporting Nightengale in the Stone County Superintendent race." Am. Compl. [15] at 4. Ms. Dearman contends that the lack of a hearing on the nonrenewal of her teaching contract "constitutes a deprivation of [her] constitutional right to due process under the 14th Amendment and the Mississippi Code." *Id.* at 5. Ms. Dearman also advances state law claims against Dr. Miller, individually, for malicious interference with employment and intentional infliction of emotional distress. *Id.* at 6.

On July 25, 2013, Dr. Miller filed the instant Motion [23] to Dismiss All Claims Against Individual Defendant Gwen Miller, asserting as grounds qualified immunity and immunities provided by the Mississippi Torts Claims Act ("MTCA"), Mississippi Code §11-46-1, *et seq.* Dr. Miller and Ms. Dearman advised the assigned United States Magistrate Judge that no discovery pertaining to Dr. Millers's Motion was necessary. August 14, 2013 Minute Entry.

## II. DISCUSSION

### A. Summary Judgment Standard

While Dr. Miller styles her Motion [23] as a Motion to Dismiss, her Motion seeks relief pursuant to Federal Rule of Civil Procedure 56. Dr. Miller has supplied numerous documents in support of her Motion. Def.'s Mem. [24] at 1. Ms. Dearman has also supplied numerous exhibits in response to Dr. Miller's Motion. For this reason, the standard of review for summary judgment will be applied. Fed. R. Civ. P. 56(d).

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,*

37 F.3d 1069, 1075 (5th Cir. 1994)(en banc). The Court does not "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton,* 232 F.3d at 477. "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

B.    Ms. Dearman's Federal Constitutional Claims and Qualified Immunity

    1.    Qualified Immunity Standard

The Fifth Circuit Court of Appeals recently summarized the "clearly drawn bright lines" and "rigorous background principles" of qualified immunity:

> [E]valuating qualified immunity is a two-step process, and the burden is on the plaintiff to prove that a government official is not entitled to qualified immunity. First, we determine whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right. A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right. The applicable law that binds the conduct of officeholders must be clearly established at the time the allegedly actionable conduct occurs. If the first step is met (i.e. the official's conduct violates an established right), the second step is to determine whether the defendant's conduct was objectively unreasonable. Both steps in the qualified immunity analysis are questions of law.
>
> Under the Fifth Circuit standard, the doctrine of qualified immunity protects government officials from civil damages liability when they reasonably could have believed that their conduct was not barred by law, and immunity is not denied unless existing precedent places the constitutional question

> *beyond debate. . . .*
>
> When deciding whether the right allegedly violated was clearly established, the court asks whether the law so clearly and unambiguously prohibited the conduct that *every* reasonable official would understand that what he is doing violates the law.  Answering in the affirmative requires the court to be able to point to controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity.  This requirement establishes a high bar.  When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity.

*Wyatt v. Fletcher*, 718 F.3d 496, 502-03 (5th Cir. 2013)(internal citations and quotations omitted).

### 2.   Ms. Dearman's Due Process Claim Against Dr. Miller

The Mississippi Code prohibits the arbitrary dismissal of school teachers covered by the Public Education Title of the Mississippi Code, Mississippi Code section 37-1-1, *et seq.  McDonald v. Mims,* 577 F.2d 951, 952 (5th Cir. 1978).  "This protection alone, under Mississippi decisional law, creates a protectable property interest." *Id.*  Viewing the alleged facts in the light most favorable to Ms. Dearman, the Court finds that a genuine issue of material fact exists regarding whether Ms. Dearman complied with the notice provisions of section 37-9-109 and whether the School District's decision not to afford Ms. Dearman a hearing on the nonrenewal of her teaching contract violated the essential requirements of procedural due process.  Ms. Dearman's counsel attests that he timely mailed Ms. Dearman's response to the specific reasons for nonreemployment to Dr. Miller.  Dr. Miller avers that she did not receive the response.  The conflicting evidence on this issue presents a fact question and makes summary dismissal of Ms. Dearman's due process claim inappropriate at

this juncture of the proceedings. *Haverda v. Hays Cty.,* 723 F.3d 586, 590 (5th Cir. 2013); *Swindle v. Livingston Parish Sch. Bd.,* 655 F.3d 386, 401-02 (5th Cir. 2011). Dr. Miller may again raise the defense of qualified immunity at a later stage. *Swindle,* 655 F.3d at 402. The portion of Dr. Miller's Motion requesting summary judgment on Ms. Dearman's Fourteenth Amendment procedural due process claim should be denied at this time.

> 3.   <u>Ms. Dearman's First Amendment Claim Against Dr. Miller</u>

"Terminating an employee for engaging in protected speech . . . is an objectively unreasonable violation of an employee's First Amendment rights . . . ." *Charles v. Grief,* 522 F.3d 508, 511 (5th Cir. 2008). To prevail on her First Amendment claim, Ms. Dearman must demonstrate that (1) she suffered an adverse employment decision; (2) her speech involved a matter of public concern; (3) her interest in commenting on the matter of public concern outweighed the defendant's interest in promoting efficiency; and (4) her speech was a substantial or motivating factor in the defendant's adverse employment decision. *Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216, 220 (5th Cir. 1999).

"Summary judgment should be used 'most sparingly in . . . First Amendment case[s] . . . involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities.'" *Beattie v. Madison Co. Sch. Dist.,* 254 F.3d 595, 600 (5th Cir. 2001)(quoting *Benningfield v. City of Houston,* 157 F.3d 369, 377 (5th Cir. 1998)). "Whether an employee's protected conduct was a substantial or motivating factor in an employer's decision to take action against the employee is a question of fact, ordinarily rendering summary disposition inappropriate." *Click v.*

*Copeland,* 970 F.2d 106, 113 (5th Cir. 1992)(citation omitted).

Dr. Miller's Motion focuses only on the causation element of a First Amendment claim.  Dr. Miller asserts that "it is clear from the facts in this case that the defendant's sole reason for the employment action taken against the plaintiff was the unauthorized access to confidential student information obtained by the plaintiff." Def.'s Mem. [24] at 6.  "[P]laintiff had been warned not to pursue this course of action yet she continued to do so."  *Id.*  Ms. Dearman responds that she has offered evidence of pretext, namely evidence that another employee committed the same offense and was not reprimanded, as well as a "chain of circumstances and events that would ultimately permit a jury to infer that the Defendants retaliated because of Dearman's political support for Nightengale in the superintendent election."  Pl.'s Resp. [25] at 10.  Ms. Dearman has cited caselaw supporting her position that a jury question exists as to causation.  *Id.* at 8-9.  In rebuttal, Dr. Miller contends that "there is no close temporal proximity . . . sufficient to create an inference of causation."  Def.'s Reply [29] at 3.  Dr. Miller has not referenced any caselaw or offered briefing on the issue of temporal proximity.  Furthermore, "the First Amendment can protect against distant retaliation."  *Jordan v. Ector Co.,* 516 F.3d 290, 300 (5th Cir. 2008).

If Ms. Rogers committed the same offense that Ms. Dearman committed but was not reprimanded, a jury could determine that the nonrenewal of Ms. Dearman's teaching contract was at least partially motivated by her support for Mr. Nightengale in the Superintendent race.

> However plausible, even compelling, the proferred justifications for [not renewing Ms. Dearman's teaching contract] sound in isolation, the evidence that [Ms. Rogers]

> engaged in conduct similar to [Ms. Dearman's] without being
> disciplined is sufficient for a reasonable jury to conclude that
> [Dr. Miller] would not have taken the same action in the
> absence of the protected conduct.

*Id.* at 301.[1]  Dr. Miller is not entitled to qualified immunity at this stage of the

proceedings, and the portion of her Motion requesting dismissal of Ms. Dearman's

First Amendment claim should be denied.

C.    Ms. Dearman's State Law Claims Against Dr. Miller

        Ms. Dearman's Amended Complaint advances claims against Dr. Miller

individually for "[m]alicious interference with employment" and intentional infliction

of emotional distress.  Am. Compl. [15] at 6.  Dr. Miller submits that these claims

should be dismissed because (1) Ms. Dearman did not file a notice of claim prior to

suit as required by the MTCA; and (2) Dr. Miller was acting within the course and

scope of her employment as Stone County School District Superintendent at all

relevant times.  Def.'s Mem. [24] at 9-10.  The MTCA generally provides that

employees of a governmental entity who act within the course and scope of

employment are not personally liable for injuries arising from their acts or omissions.

Miss. Code Ann. § 11-46-7(2).

---

[1] Dr. Miller argues for the first time in her Reply that Ms. Dearman has offered
no proof that Dr. Miller knew that Ms. Dearman supported Mr. Nightengale in the
Superintendent race.  The Court has not considered this assertion in rendering its
decision because "[i]t is the practice of [the Fifth Circuit Court of Appeals] and the
district courts to refuse to consider arguments raised for the first time in reply briefs."
*Gillaspy v. Dallas Indep. Sch. Dist.,* No. 06-11204, 278 F. App'x 307, 315 (5th Cir.
May 13, 2008).

1.     Malicious Interference with Employment

Ms. Dearman did not submit a MTCA notice of claim before instituting this suit.  She asserts that presuit notice is not required for a malicious interference with employment claim because torts which require proof of malice fall outside the scope of the MTCA.  *See* Miss Code Ann. § 11-46-5(2).  Under the MTCA,

> an employee shall not be considered as acting within the course and scope of employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.

*Id.*

Ms. Dearman relies on *Zumwalt v. Jones Co. Bd. of Supervisors,* where the Mississippi Supreme Court held that the MTCA does not apply to claims for "tortious interference with business relations and/or contracts" because these claims require proof of malice as an essential element.  19 So. 3d 672, 688 (Miss. 2009).  Because malice is an essential element of such claims, they can only be advanced against an employee individually; a governmental entity is immune from claims requiring proof of malice.  *Id.*

In evaluating the *Zumwalt* decision, the Fifth Circuit Court of Appeals has found that more recent Mississippi Supreme precedent contradicts *Zumwalt* "on the question of whether a plaintiff alleging malicious interference by a public employee must satisfy the notice requirements of § 11-46-11 of the MTCA."  *Johnson v. City of Shelby, Miss.,* No. 12-60735, 2013 WL 6069438, *3 (5th Cir. Nov. 19, 2013)(referencing *Whiting v. Univ. of S. Miss.,* 62 So. 3d 907 (Miss. 2011)).  Dr. Miller,

however, does not address *Zumwalt* in rebuttal or attempt to distinguish it, and for this reason, the Court will not dismiss Ms. Dearman's malicious interference with employment claim at this point on grounds that MTCA presuit notice was not given.

"[A] claim for tortious interference with at-will contracts of employment is [a] viable claim" in Mississippi." *Levens v. Campbell,* 733 So. 2d 753, 760 (Miss. 1999). To prevail, a plaintiff must prove (1) the defendant's acts were intentional and willful; (2) calculated to cause damage to plaintiff in her lawful business; (3) done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and (4) actual loss occurred. *Id.* at 760-61. "[O]ne occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Shaw v. Burchfield,* 481 So. 2d 247, 255 (Miss. 1985). The bad faith exception to the privilege is "namely, that when an intentional act occurs whose purpose is to cause injury to business *without right or good cause*, then there is malice." *Morrison v. Miss. Enterp. for Tech., Inc.,* 798 So. 2d 567, 575-76 (Miss. Ct. App. 2001)(emphasis supplied).

A jury could conclude "from the facts that an employment relationship was formed [between Ms. Dearman and the School District], or at the very least contemplated to the extent that a third party could tortiously interfere." *Levens,* 733 So. 2d at 761. As Superintendent, Dr. Miller has authority "[t]o enter into contracts in the manner provided by law with each . . . teacher of the public schools under his supervision . . . ." Miss. Code Ann. § 37-9-14(2)(a). Dr. Miller's actions within the scope of this authority are privileged unless taken in bad faith. *Levens,* 733 So. 2d at

761; *Morrison,* 798 So. 2d at 575.  Ms. Dearman alleges that circumstantial evidence in the record supports the conclusion that Dr. Miller's conduct amounted to bad faith. Pl.'s Resp. [25] at 13.

"[B]ad faith raises an issue of motive.  It is not necessary for direct evidence to exist, such as an admission by the defendant that he acted in bad faith.  Instead, such a conclusion generally arises as an inference from other evidence." *Morrison,* 798 So. 2d at 575.  The Court is of the opinion that the determination of whether Dr. Miller acted in bad faith and "without right or justifiable cause" presents a fact issue. *Haverda,* 723 F.3d at 599; *Stephen v. Winston Co., Miss.,* No. 1:07cv118-SA-JAD, 2008 WL 4813829, *9 (N.D. Miss. Nov. 4, 2008); *Crabb v. Itawamba Co., Miss.,* No. 1:04cv138-P-D, 2005 WL 2648017 (N.D. Miss. Oct. 17, 2005).  The portion of Dr. Miller's Motion requesting dismissal of Ms. Dearman's malicious interference with employment claim should be denied.

      2.   <u>Intentional Infliction of Emotional Distress</u>

Ms. Dearman's intentional infliction of emotional distress claim against Dr. Miller, however, should be dismissed.  Dr. Miller asserts that this claim is not excepted from MTCA presuit notice requirements.  Ms. Dearman has not responded to this argument and therefore has not carried her summary judgment burden of demonstrating that this claim should proceed.  "A party who inadequately briefs an issue is considered to have abandoned the claim." *Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir. 1994).  Furthermore, there is no evidence in the record that Dr. Miller's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as utterly intolerable in a civilized

-16-

community." *Speed v. Scott,* 787 So. 2d 626, 630 (Miss. 2001).  "Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress." *Brown v. Inter-City Fed. Bank for Sav.,* 738 So. 2d 262, 265 (Miss. Ct. App. 1999)(citations omitted).  The portion of Dr. Miller's Motion requesting dismissal of Ms. Dearman's claim for intentional infliction of emotional distress should be granted.

      3.    <u>Defamation</u>

      In her Response, Ms. Dearman submits that she pleaded a claim for defamation in her Amended Complaint, which should proceed because Dr. Miller did not request dismissal of this claim in her Motion.  Pl.'s Resp. [25] at 18.  In Reply [29], Dr. Miller maintains that Ms. Dearman did not adequately plead defamation in her Amended Complaint.  Def.'s Reply [29] at 14-15.  "[A] complaint for defamation must provide allegations of sufficient particularity so as to give the defendant or defendants notice of the nature of the complained-of statements." *Chalk v. Bertholf,* 980 So. 2d 290, 297 (Miss. Ct. App. 2007).  The Court has thoroughly reviewed Ms. Dearman's Amended Complaint and found no reference to defamation or factual allegations of sufficient particularity that would provide Dr. Miller notice that Ms. Dearman was advancing a claim for defamation.  Ms. Dearman has not met the requirements of Mississippi law and Federal Rule of Civil Procedure 8(a)(2) for pleading defamation.  To the extent the Amended Complaint could ever be construed to advance a defamation claim, it should be dismissed.

III.  <u>CONCLUSION</u>

For the foregoing reasons, Ms. Dearman's claims against Dr. Miller individually for retaliation under the First Amendment, violation of procedural due process under the Fourteenth Amendment, and malicious interference with employment will not be dismissed on summary judgment on the basis of qualified immunity.  Ms. Dearman's claim against Dr. Miller for intentional infliction of emotional distress will be dismissed.  Ms. Dearman's purported claim for defamation against Dr. Miller will not proceed because it was not adequately pleaded.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant Dr. Gwen Miller's Motion [23] to Dismiss All Claims Against Individual Defendant Gwen Miller is **GRANTED IN PART AND DENIED IN PART**.  Three claims will proceed against Dr. Miller individually, namely Plaintiff Kristi Dearman's claims for retaliation under the First Amendment, violation of procedural due process under the Fourteenth Amendment, and malicious interference with employment.  Ms. Dearman's claim against Dr. Miller individually for intentional infliction of emotional distress is **DISMISSED**.  Ms. Dearman did not adequately plead a claim for defamation, and accordingly, no claim for defamation will proceed.  To the extent the Amended Complaint could be construed to raise a defamation claim, it is **DISMISSED**.

**SO ORDERED AND ADJUDGED**, this the 21st day of March, 2014.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

-18-